UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MELVIN SMITH** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-3294** |
| **MICHAEL J. ASTRUE,**<br>**COMMISSIONER OF SOCIAL SECURITY** | **SECTION: "J" (4)** |

**REPORT AND RECOMMENDATION**

**I.    Introduction**

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 U.S.C. § 405(g). The Commissioner denied Melvin Smith's claim for Supplemental Security Income Benefits under Title XVI of the Social Security Act, Title 42 U.S.C. §§ 1381, et seq., 1382(c).

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

**II.    Factual Summary**

This is Smith's second application for Supplemental Social Security Income. He filed his first application on July 29, 2002 alleging that he has been disabled since July 26, 2002 from high blood pressure and chest pain. (Tr. 55, 60).

On November 19, 2002, the Social Security Administration denied his request for benefits and Smith requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 48, 52). The ALJ denied his request for benefits on October 8, 2003. (Tr. 31-37). Smith sought review with the Appeals Council which denied his request on May 7, 2004. (Tr. 22). There is no evidence that Smith ever sought further review of the denial.

At the time this second request was filed Smith was a forty-nine-year-old man with one year of college education. (Tr. 280-281). He previously worked as a roofer and truck driver. He complains that his disability began on April 4, 2002 and consists of hypertension, chest pain, and back pain. (Tr. 207). He further complains that he suffers a lumbar disc herniation at the L4-5, L3-4 levels.

On October 15, 2003, Smith submitted an application for disability benefits. (Tr. 200). On January 9, 2004, the Social Security Administration denied Smith's claim for Disability Insurance Benefits. (Tr. 186).

Smith thereafter filed a request for a hearing by an Administrative Law Judge ("ALJ") which was granted, and the ALJ, Gary L. Vanderhoof, held a hearing on August 2, 2005. (Tr. 190, 196). On November 1, 2005, the ALJ issued a decision dated August 15, 2005, determining that Smith was not disabled under the regulations.[1] (Tr. 14-20). He specifically held that Smith has the medically determined impairments of hypertension, cervical and lumbar degenerative disc disease, and degenerative arthritis of the right hip, that impose more than a minimal limitation on his ability to perform regular work-related activities and can be considered as severe within the meaning of 20 C.F.R. 416.920(C). (Finding 2, Tr. 19).

---

[1] Although the decision was stamp dated August 19, 2005, a notation initialed by the ALJ indicated a date of November 1, 2005. November 1, 2005 is the date used by the Appeals Council. (Tr 6).

2

He further held that the medical evidence fails to demonstrate that the impairments, whether considered singly or in combination, meet the severity criteria of an impairment described at 20 C.F.R. Pt. 404. Subpt.P, App. 1.  (Finding 3, Tr. 19).  He further found that Smith's testimony did not establish the existence of a disabling limitation and was not entirely consistent with the medical evidence.  (Finding 4, Tr. 19).

The ALJ found that Smith retained the residual functional capacity to lift 10 pounds frequently and 20 pounds occasionally.  (Finding 6, Tr. 19).  The ALJ further found that Smith could stand and walk for up to 6 hours in an 8 hour day but that he should not be required to balance or work at heights.  *Id.*

Finally, the ALJ noted that after considering Smith's vocational profile and residual functional capacity, the Vocational Expert identified light jobs in the state and national economy that Smith could perform: namely; cashier; account collector; and customer service representative. (Finding 8, Tr. 19).  The ALJ therefore held that Smith has not been under a disability as defined in the Social Security Act at any relevant time through the date of this decision.  (Finding 9, Tr. 19).

On April 24, 2006, the Appeals Council denied Smith's request and affirmed the decision of the ALJ.  (Tr. 6-8).  On June 26, 2006, Smith appealed the decision seeking review in this Court. (Rec. Doc. #1).

**III.    Standard of Review**

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether:  (1) the final decision is supported by substantial evidence; and (2) whether the Commissioner applied the proper legal standards when evaluating the evidence.  *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).  The Court may not re-weigh the evidence, try issues *de*

*novo,* or substitute its judgment for that of the Secretary. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995). It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973).

A single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

Finally, the Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnosis and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [the claimant's] age, education, and work history." *Hendricks v. Apfel*, CIV.A.99-1212, 2000 WL 174884, at *3 (E.D. La. Feb. 14, 2000) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

**IV.** **Analysis**

    **A.** **Whether the ALJ erred in finding that Smith's medical condition does not meet or equal the criteria for any impairment listed in Appendix I, Subpart P, Part 404.**

        **1.** **Lower Back Problems**

Smith contends that the ALJ's decision is not based upon substantial evidence because his medical conditions, lower back pain and hypertension, were severe enough to medically equal the criteria for a listing level impairment. He therefore contends that he is entitled to benefits.

The Commissioner contends that the ALJ properly considered all the objective evidence, followed the appropriate regulatory law and Fifth Circuit precedent such that the opinion is based upon substantial evidence. The Commissioner further contends that the ALJ's decision should be affirmed.

A musculoskeletal impairment (such as degenerative disc disease)[2] is severe enough to prevent a person from doing any gainful activity or employment if it results in compromise of a nerve root (including the cauda equina) or the spinal cord and is accompanied by limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. 404 Subpt. P. App. 1 §1.04 (A).

The ALJ noted that the medical record did not support a finding that Smith met the listing level requirement of 1.04(A). ( Tr. 15). In so doing he noted that during the independent medical examination, Smith did not physically show any evidence of lumbosacral nerve root involvement. *Id*. He further noted that despite diagnostic indications of lumbar disc herniation, repeated examinations failed to show that he had a significant loss of strength, sensation or motor function. *Id*. He also noted that cervical findings did not include evidence of atrophy, loss of sensation or substantially compromised range of motion. *Id.* He therefore concluded that the medical findings were not consistent with the degree of functional loss contemplated in Listing 1.04(A) and 1.04( C).

---

[2]Under the listing of impairments, this includes herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, and vertebral fracture. *See* 20 C.F.R. 404 Subpt. P. App. 1 §1.04.

*Id.* Specifically regarding Listing 1.04( C), the ALJ held that there were no established findings of pseudoclaudication and he noted that Smith was able to ambulate effectively without objective impairment of gait. *Id.*

The record shows that on April 4, 2002, Smith sought treatment from Dr. S. Mark McKenna, a general medicine specialist. (Tr. 165). Upon examination, of his neck, positive spasms were noted of the paraspinal, posterocervical musculature and pain with flexion and rotation of the neck. *Id.* Upon examination of the lumbar spine, spasms were noted but the results of the straight leg raising examination was negative. ( Tr. 166).  Dr. McKenna noted that Smith was placed on hydrocollator heat therapy twice weekly but did not return after May 1, 2002 for any follow up visits. (Tr. 168). He was prescribed Soma, a muscle relaxant and Tylenol #3. (Tr. 167).

On July 24, 2002, Smith was admitted to St. Charles General Hospital as a result of complaints of dizziness and chest pain. (Tr. 86). He was diagnosed with hypertension. (Tr. 83). During his his two day stay, it was noted that he complained of tenderness in his neck and lower back. (Tr. 82). However good range of motion was found in all joints. *Id.* Additionally upon examination, of the central nervous system, it was normal. *Id.*

On October 21, 2002, Smith was evaluated by Dr. Milijana Mandich, an internal medicine specialist. (Tr. 109-114). Dr. Mandich performed a complete examination and noted that on physical examination, Smith could ambulate without difficulty. (Tr. 113). The examination of his spine and back were normal with no positive physical findings whatsoever. *Id.* Dr. Mandich also noted that his extremities were normal with no edema and no abnormalities of joints, bones or muscles. (Tr. 114). Neurologically, he was intact and he also had a normal EKG. *Id.*

On October 23, 2002, Dr. Henry Evans recommended an MRI. (Tr. 137). The MRI of the

lumbar spine was conducted on January 28, 2003. (Tr. 134). The diagnostic test revealed evidence of lumbar stenosis, mild disc narrowing with mild disc dehydration at L2-L3, mild disc narrowing, mild disc dehydration, with an extraligamentous central disc herniation at L4-5 with fragmentation and migration of the extruded fragment toward the left resulting in left neural formaminal encroachment at L4-5. (Tr. 134). Dr. Evans therefore concluded that Smith had degenerative Lumbar Disc Disease and Lumbar Disc Syndrome. (Tr. 131).

On January 12, 2004, Smith was seen again by Dr. Mandich. (Tr. 262-266). During this visit Dr. Mandich noted that Smith was taking Vicodin and Soma as needed for his back pain. (Tr. 262). Dr. Mandich also noted that Smith ambulated well without self support getting on and off the chair and exam table. (Tr. 264). Dr. Mandich noted that Smith has normal range of motion of the neck and lower back and that he complained of pain across the lower back at the heel of the sacroiliac junctions with forward flexion and reversal and backward extension. *Id*. Pain was noted down the sides of his hips but he could heel toe walk and squat all the way down and rise without support. *Id*. During this visit he was diagnosed with hypertension and chronic lower back pain. (Tr. 265).

On June 29, 2005, Smith went to Dr. Gordon Nutik for an independent medical examination. (Tr. 270). Dr. Nutik noted that Smith reported that his neck pain had improved and only occurred occasionally. (Tr. 271). Smith further complained of pain across his lower back and radiating pain laterally about the right lower extremity to the right lateral calf to the ankle. *Id*. He reported that he uses muscles in his left leg more to get up from a seated position and he denied numbness about the lower extremities. *Id*. Upon examination he was not able to walk on his heels or toes because of lower back pain. *Id*.

Upon examination, Dr. Nutik noted normal cervical lordosis and pain to palpation about the right and left trapezius muscles adjacent to the base of the neck. (Tr. 272). He refused to bend forward because he complained that it would hurt his lower back. *Id.* No spasm was noted in his back muscles. *Id.* Lateral bending as well as rotational movements were approximately 25%. *Id.* The sitting stretch tests were negative and he was able to sit completely upright on the exam table with the knees kept bilaterally. *Id.* He complained of lower back pain with the straight leg raising on the right. Lasegue tests were negative.[3] *Id.*

A neurologic examination of the lower extremities revealed a 2+ Achilles and patellar tendon reflex bilaterally. *Id.* There was normal sensation to light touch. *Id.* He complained of lower back pain with the range of motion of the right hip. (Tr. 273). However, when he performed Patrick's test,[4] a test in which the hip is rotated externally, the results were negative. (Tr. 273).

Dr. Nutik further reviewed Smith's MRI of the lumbar spine and the x-rays taken of his spine. *Id.* After reviewing the film he concluded that Smith sustained a lower back injury which may have consisted of a soft tissue strain and that there is evidence of disc herniation at the L4-5 level with no nerve root impingement. (Tr. 274). He further opined that surgery was not appropriate on Smith as there were inconsistencies in the findings of nerve root involvement. *Id.*

The records indicated that Smith has degenerative disc disease which does not compromise the nerve root or spinal cord. While limitation of the spine was present, his reflexes were normal

---

[3] Lasegue test is also known as the Straight-Leg Raising test. *See* Edgar G. Dawson, M.D., *Herniated Discs*, Spineuniverse.com at http://www.spineuniverse.com/displayarticle.php/article1431.html.

[4] Patrick's Test is a test in which the production of pain on external hip rotation suggests sacrolilitits. *See* Patrick's Test, Family Practice Notebook.com, at http://www.fpnotebook.com/RHE37.htm.

and his straight leg test , identified as Leasgue's test, was negative. The negative straight leg raising is consistent with the absence of diagnostic results confirming impingement of the nerve root. The Court concludes therefore that the ALJ's opinion that Smith did not meet the 1.04 Listing Level requirement is based upon substantial evidence.

### B.     Hypertension

Smith further contends that the ALJ erred when he denied his claim for benefits because he suffers with uncontrolled hypertension. He complains that due to his hypertension condition he cannot work. Smith cites to several pages in the record he contends supports his position that his hypertension is disabling.

The Commissioner contends that the ALJ's opinion is supported by substantial evidence because his hypertensive condition is controlled with medication. The Commissioner further contends that the combined effects of Smith's back impairment and hypertension did not equal the requirements of Listing Level 1.04(A).

In this case, the ALJ noted the issue of Smith's disability through October 8, 2003 has already been adjudicated by the prior ALJ and is thus barred from further review as *res judicata*. (Tr. 15). The ALJ also noted that while Smith has the medically determinable impairment of hypertension, the medical evidence failed to show that the impairment was severe under the regulations.

A decision by the ALJ to not reopen a case or a *res judicata* determination is not reviewable. *Carter v. Heckler*, 712 F.2d 137, 142 (5th Cir.1983); *see also Butler v. Sullivan*, CIV.A.92-2297, 1993 WL 291777, at * 3 (E.D. La. April 20, 1993) (noting that a federal court simply has no jurisdiction to review the Secretary's decision not to reopen a case or a Secretary's *res judicata*

determination."). Thus, to the extent that Smith seeks this Court's review of the *res judicata* determination, "the law is clear--the federal courts have no jurisdiction to review the Secretary's decision not to reopen a case or to review the Secretary's *res judicata* determination." *Morgan v. Sullivan,* CIV.A.91-4147, 1993 WL 35263 at *3 (E.D. La. Feb. 9, 1993). Smith's claim of disability based on hypertension prior to October 8, 2003 has already been fully addressed by the earlier ALJ opinion. Accordingly, the ALJ's decision regarding Smith's hypertension before October 8, 2003, is barred from review.

The Court further notes that the record references by the plaintiff purportedly supporting his claim of disabling hypertension predate the earlier ALJ opinion and are barred from review by this Court. Indeed, a review of the record reveals only one post October 8, 2003 medical report mentioning Smith's hypertension.

Dr. Mandich examined Smith on January 12, 2004 and indicated that Smith had been on blood pressure medication for a year-and-a-half. (Tr. 262). Smith reported to Dr. Mandich that symptoms of his high blood pressure are relieved when he takes his morning medication. (Tr. 266). During the exam, Smith's blood pressure was elevated at 180/110. *Id.* However, Smith indicated that he had not taken his morning medication to control his high blood pressure. *Id.*

In this case, the Court notes that while Smith has been diagnosed with hypertension, he concedes that it is controlled by medication. The Fifth Circuit has expressly held that "[w]hen the record indicates that hypertension can be controlled with medication, the hypertension is not disabling." *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986). As such, the Court concludes that the ALJ's opinion that Smith's hypertension is not severe is based on substantial evidence.

Accordingly,

## V.     Recommendation

It is the **RECOMMENDATION OF THIS COURT** that the ALJ's decision denying Melvin Smith's claim for Supplemental Security Income Benefits be **AFFIRMED.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this __27th__ day of August 2007

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**